UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

PINO MORIN,

                Plaintiff,

v.

HOBOKEN BOARD OF EDUCATION,

                Defendant.

Civ. No. 13-cv-00591 (KM)

OPINION

**KEVIN MCNULTY, U.S.D.J.:**

The plaintiff, Pino Morin, sues for amounts allegedly owed him as a result of his former employment with the defendant, Hoboken Board of Education ("HBOE"). Now before the Court is HBOE's motion for summary judgment. For the reasons set forth below, the motion is granted.

**I.    BACKGROUND**

In 2003, Pino Morin began working for HBOE as a food services truck driver. (Compl., Dkt. No. 1-2, ¶4) His job was primarily to deliver food and supplies to schools within the city of Hoboken. (Plaintiff's Statement of Undisputed Material Facts, Dkt. No. 27-4, ¶3) In June 2010, Morin's position was abolished and his work outsourced to Chartwells, a private food services vendor.

The terms of Morin's employment are unclear. He did not have any formal or long-term employment contract with HBOE. (*See* Deposition of Pino Morin ("Morin Dep."), Dkt. No. 23-4, at 29:8-10) Instead, towards the end of each school year, HBOE would send him a letter re-appointing him for the following year. (*Id.* at 75:22-25, 76:1-3). Morin typically worked 30 hours a week. It is unclear, however, whether his salary was calculated hourly or annually. Morin testified that during the 2009-2010 school year, he was paid

"$17 or $18 an hour." (Morin Dep., Dkt. No. 23-4, 28:9-19) He also received a letter, however, stating that he would be paid a "salary" of $14,842.80 for that same school year. (Def. Ex. L, Dkt. No. 23-3, at 74) There is no information in the record as to the amount of Morin's salary or rate of pay for any year other than 2009-10.

Morin claims, and HBOE does not seem to deny, that he used his own van to make deliveries and paid for gas out of his own pocket. (Morin Dep., Dkt. No. 23-4, 39:5-9) This arrangement was an accommodation to practicality; Morin did not have a license to drive a school bus and the only other vehicle owned by HBOE was unsuitable for making deliveries. (*See* Deposition of Michael Craven, Dkt. No. 27-9, at 28:6-20)

Before the 2008-2009 school year began, HBOE hired Chartwells to provide food services for Hoboken's schools. (Defendant's Ex. F, Dkt. No. 23-3, at 37) In November 2009, a private accounting firm audited HBOE's budget and expenditures and issued a report recommending ways to cut costs. (*See* Defendant's Ex. D, Dkt. No. 23-3, at 22) Pursuant to that report, HBOE says, it adopted a "Corrective Action Plan."[1] That Plan called for, *inter alia*, outsourcing the entire food services program to Chartwells in order to "[r]educe Board of Education paid staff supporting food service." (Defendant's Statement of Undisputed Material Facts ("Def. Facts"), Dkt. No. 29-1, ¶39)

HBOE eliminated the food service positions on its payroll. (Defendant's Answers to Plaintiff's First Set of Interrogatories, Dkt. No. 23-3, at 28) Morin, however, was retained and continued to work as a truck driver for the remainder of the 2008-2009 school year. (*Id.*)

Morin's was reappointed for the 2009-2010 school year. At some point—it is not clear when—he received a letter which stated:

---

[1] Although the Corrective Action Plan was ostensibly adopted in response to the audit report, it is dated June 30, 2009—more than four months *before* the audit report was completed. (*See* Defendant's Ex. D, Dkt. No. 23-3, at 24)

2

> The purpose of this letter is to reaffirm your appointment to your 2009-2010 position as a staff member of the Hoboken Board of Education in Hoboken, New Jersey, in the County of Hudson, by virtue of your reappointment approved by the Board of Education at their regular meeting held on December 15, 2009. This letter will also serve as your 'contract' with the Board for the current school year by virtue of the Board's action of December 15, 2009 on a document which bears your name and the annual salary for the 2009-10.

(Defendant's Ex. L, Dkt. No. 23-4, at 35) The letter separately lists Morin's salary as $14,842.80, but contains no other details regarding his employment. (*Id.*)[2]

On June 8, 2010, the members of the HBOE unanimously voted to abolish Morin's position. (Def. Facts, ¶40) The resolution stated:

> WHEREAS, the Hoboken Board of Education has contract with Chartwells to provide food services for the district, and
>
> WHEREAS, the board of education auditors recommended that all food service employees be the responsibility of the private food service providers, and
>
> WHEREAS, a position still exists on the board payrolls for a food service truck driver,
>
> NOW THEREFORE BE IT RESOLVED, that the Hoboken Board of Education hereby abolished the position of food service truck driver and recommends to Chartwells that they contract with said employee for the position of food service truck driver[.]

HBOE sent Morin a letter dated June 10, 2010, informing him that his position had been abolished and that he would not be reappointed for the 2010-2011 school year. (Defendant's Ex. L, 23-3, at 74) Morin claims that he never received the letter. (Morin Dep., Dkt. No. 23-4, 22:14-19)

---

[2]   Although the text of the letter refers to 2009-2010 school year, the letter is dated "June 2010"— the final month of that year. HBOE cannot explain this discrepancy, but Morin does not seem to dispute that the letter refers to 2009-2010 school year. (*See* Morin Dep., Dkt. 23-4, 70-72)

3

He does not seem to dispute, however, that his employment ceased as of the end of the 2009-10 school year.

On December 31, 2012, Morin brought this action against HBOE in the Superior Court of New Jersey in Hudson County. His complaint asserts claims for wrongful discharge (Count I), breach of contract (Count II), breach of the implied covenant of good faith and fair dealing (Count III), violation of due process (Count IV), violation of the New Jersey Law Against Discrimination (Count V), violation of the Fair Labor Standards Act (Count VI), and violation of the Employee Retirement Income Security Act, the Older Workers Benefits Protection Act, and the New Jersey State Wage Payment Law (Count VII).

HBOE removed the action to this Court on January 30, 2013. (Dkt. No. 1) Now before the Court is HBOE's motion for summary judgment. Morin states in his opposition that he is dropping Counts I, IV, V, and VII of the Complaint. (Brief in Opposition, Dkt. No. 27, at 1) Accordingly, I will grant HBOE's motion as to these voluntarily withdrawn claims. The rest of this opinion will consider only the remaining claims: Counts II, III, and VI.

## II.   JURISDICTION

This Court has jurisdiction over Morin's removed federal and state law claims pursuant to 28 U.S.C. §§ 1331, 1367, and 1441(c).

## III.   SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v.*

*County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. In all cases, the ultimate question is "whether a jury could reasonably find either that Sims proved his case by the quality and quantity of evidence required by the governing law or that he did not." *Anderson*, 477 U.S. at 254.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* FED. R. CIV. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial.").

## IV. ANALYSIS

### A. Count VI – Fair Labor Standards Act

Morin alleges that HBOE violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") by failing to reimburse him for the amounts he spent on gas and other expenses arising from the use of his personal vehicle. HBOE replies that there is no evidence in the record to suggest that Morin has a cognizable claim under the FLSA and that, in any event, any such claim is time barred.

The FLSA "establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013). Section 206 prescribes the minimum wage, stating that "[e]very employer shall pay to each of his employees...not less than...$7.25 hour." 29 U.S.C. § 206(a)(1)(C). Section 207 mandates that an employee who works "longer than forty hours" in a single week must receive overtime pay "at a rate not less than one and one-half times the regular rate at which he is employed. 29 U.S.C. § 207(a)(2)(C).

The FLSA does not expressly address an employer's obligation to reimburse an employee's expenses. But Department of Labor regulations provide that the FLSA's minimum wage requirements "will not be met where the employee 'kicks-back' directly or indirectly to the employer...the whole or part of the wage delivered to the employee." 29 C.F.R. § 531.35. Such a "kick-back" may occur when the cost of items specifically required for the job "cuts into the minimum or overtime wages required to be paid [the employee] under the Act." *Id.* The upshot, then, is employers need reimburse employees for expenses incurred on their behalf only if, without reimbursement, the employee's net hourly pay would fall below the minimum wage prescribed by the FLSA. *See, e.g., Zellagui v. MCD Pizza, Inc.*, 2014 WL 5934113, at *2 (E.D. Pa. Nov. 13, 2014) ("Employers are required to reimburse hourly-paid employees who drive for work to cover the vehicle-related expenses they incur so their hourly wages do not fall below the minimum when those expenses are taken into account."); *Bellaspica v. PJPA, LLC*, 357 F.Supp.3d 257, 260 (E.D. Pa. 2014) ("Under the FLSA, employees who use their personal vehicles for work must be reimbursed for vehicle-related costs if not doing so would cause their net earnings to drop below the minimum wage.").

Here, the record evidence falls far short of establishing an FLSA claim. Even if I assume that Morin purchased gas and other items for the benefit of HBOE, there is no way to determine whether his pay would fall below the

FLSA-mandated minimum wage without reimbursement. To begin with, Morin's hourly compensation is difficult to determine. There is no evidence regarding his compensation from 2003 to 2009. Morin testified that in his final year of employment (the 2009-2010 school year), he received "$17 or $18 an hour"; a letter from HBOE, however, sets his annual salary at $14,842.80. Under either formulation, in 2009-10 Morin was paid well above the minimum wage of $7.25 per hour.[3] Compounding the problem, there is no evidence — literally none — documenting the amounts Morin allegedly spent for HBOE's benefit on gas or his personal vehicle. Without some estimate of Morin's earnings and expenditures during each year of his employment, it is impossible to determine whether HBOE violated the FLSA.

Accordingly, summary judgment is entered as to Count VI. Because this claim fails on the merits, I do not reach the statute of limitations issue.

### B. Counts II and III – Breach of Contract and Breach of Covenant of Good Faith

Morin next alleges that by not reimbursing him for the same vehicle-related expenditures that gave rise to his failed FLSA claim, HBOE breached its contractual obligations (Count II) and violated the implied covenant of good faith and fair dealing (Count III).

Morin admittedly never had a formal employment contract with HBOE.[4] (Morin Dep., Dkt. No. 23-4, 29:8-10) Instead, he maintains that the Online Policy Manuel ("OPM"), which sets forth HBOE's bylaws and policies, creates a

---

[3] Morin worked between September 1st and June 30th every year, a period of approximately 43 weeks, for 30 hours per week. (See Morin Dep., Dkt. No. 23-4, 28:3-5). Arithmetically, a salary of $14,842.80 works out to approximately $11.51 an hour, $4.26 above the minimum wage established by the FLSA. Neither party attempts to reconcile this figure with Morin's testimony that he made $17 or $18 per hour.

[4] Although the re-appointment letter dated "June 2010" states that it shall constitute a "contract," Morin does not argue that this letter creates a contractual right to reimbursement. Nor could he, as the letter is silent on this matter. (See Def. Ex. L., Dkt. No. 23-4, at 35)

contractual expectation that entitles him to reimbursement. Relying primarily on *Woolley v. Hoffmann-La Rouche, Inc.*, 99 N.J. 284 (1985), he argues that representations made in employee handbooks such as the OPM are enforceable.

In *Woolley,* the Court recognized a cause of action for wrongful discharge of an at-will employee who is not otherwise protected by an employment contract, based on a violation of the employer's expressed employment standards and practices. *Id.* at 298-301. The Court stated that "when an employer of a substantial number of employees circulates a manual that, when fairly read, provides that certain benefits are an incident of the employment (including, especially, job security provisions) the judiciary ... should construe [it] in accordance with the reasonable expectations of the employees." *Id.* at 297-98.

Here, the OPM contains a provision entitled "BYLAW: 9250 EXPENSES AND REIMBURSMENTS." That provision states: "Board members and employees shall only be reimbursed for work related travel that is directly related to and within the scope of the...employee's current work responsibilities." (*See* Pl. Ex. J, Dkt. No. 27-11, at 7) This provision, says Morin, obligates HBOE to reimburse him for gasoline and other vehicle-related expenses that he incurred in performing his job.

*Woolley* concerns the conditions under which the usual presumption of at-will employment may be overcome by representations in an employee handbook. *See King v. Port Auth. of New York & New Jersey*, 909 F. Supp. 938, 942 (D.N.J. 1995) *aff'd*, 106 F.3d 385 (3d Cir. 1996) ("In order to proffer a plausible *Woolley* claim, the plaintiff is required to bring to the Court's attention some provision or language within the manual or handbook which guarantees that he will not be terminated except for good cause.") It does not specifically address other representations, such as reimbursement policies. But

8

even if *Woolley* could be read to support such a claim, Morin's claim for breach of contract would still fail on multiple grounds.

For the period 2003-March 2009, the bylaw he cites did not even exist. It was first adopted on March 31, 2009. This bylaw could not have given rise to any "reasonable expectation[]" of reimbursement before it was adopted. *Woolley*, 99 N.J. at 298.

Even for the period after the bylaw's adoption, Morin has failed to demonstrate any entitlement to reimbursement. The bylaw's full text requires that an HBOE employee seeking reimbursement must receive prior approval and submit documentation of the expenditures in question. That requirement of prior approval is categorical:

> No district employee shall be reimbursed for travel and related expenses without prior written approval of the chief school administrator or charter school lead person, and prior approval by a majority of the full voting membership of the Board.

(Pl. Ex. J, Dkt. No. 27-11, at 8). Equally categorical is the requirement that expense reimbursements be claimed and documented:

> No reimbursement will be issued without submission of written documentation such as receipts, checks and vouchers detailing the amount [of] the expenditures.

(*Id.* at 7)

There is no evidence in the record that Morin ever sought or obtained prior approval for any expenditure. There is no evidence that he ever even sought reimbursement, let alone documented his expenses with receipts and vouchers. Even now, the record contains no documentation, or even a calculation or estimate, of these expenses. Even if the reimbursement policy were an enforceable contract, Morin could not establish that he complied with the policy, sought benefits under it, or is entitled to anything as a result.

9

Morin's claim for breach of contract fails for lack of evidence, and as a matter of law. Summary judgment will therefore be entered in favor of HBOE on Count II.

Count III must likewise be dismissed. The covenant of good faith and fair dealing does not stand alone; it is an implied term of a contract. Because there is no valid, enforceable contract, Morin's claim for breach of the covenant of good faith and fair dealing falls with it. *See Comcast Spectacor L.P. v. Chubb & Son, Inc.*, 2006 WL 2302686, at *19 (E.D. Pa. Aug. 8, 2006) ("[W]e must dismiss the claim for breach of implied duty of good faith and fair dealing if we dismiss the breach of contract claim."); *Wade v. Kessler Inst.*, 172 N.J. 327, 345, 798 A.2d 1251, 1262 (2002) ("To the extent plaintiff contends that a breach of the implied covenant may arise absent an express or implied contract, that contention finds no support in our case law.")

At any rate, it is not a breach of the covenant of good faith and fair dealing to withhold reimbursement for expenses that were never claimed or documented. And Morin's failure to document these expenditures further disqualifies him from obtaining relief on this claim.

Summary judgment will therefore be entered in favor of HBOE on Count III.

## V. CONCLUSION

For the reasons stated above, HBOE's motion for summary judgment is **GRANTED**, and the Complaint will be dismissed in its entirety, with prejudice.

An appropriate order will issue.

KEVIN MCNULTY, U.S.D.J.

Date: April 13, 2015